**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**UNITED STATES OF AMERICA**

**v.** **Case No. 8:25-cr-00545-MSS-AEP**

**GAYNELL JEFFRIES**
**_________________________________/**

# DEFENDANT'S TRIAL BRIEF ON ENTRAPMENT BY ESTOPPEL

The Defendant, Gaynell Jeffries, by and through her attorneys, in accordance with the Court's Order (Doc. 53), submits her trial brief on the availability of the affirmative defense of entrapment of estoppel, stating and arguing as follows:

## MEMORANDUM OF LAW

### I. Question presented.

Whether a defendant accused of voting in a federal election illegally as a noncitizen can assert an entrapment by estoppel defense when she reasonably relied on the mistaken advice of a voter registration official at her local supervisor of elections office, who has the actual or apparent authority to register eligible voters under federal law, who led her to believe she was eligible to register and vote as a noncitizen. The short answer to the question presented is yes.

## II. Statement of facts.

On September 14, 2018, Gaynell Jeffries, a lawful permanent resident, went with her husband to their local Pasco County Supervisor of Elections Office in Dade City after she learned from friends and other sources that she could vote. Ex. 4 at Disc. 188. Jeffries went in person to her local election office to speak with a voter registration official to verify whether she was able to vote. Jeffries met with a voter registration official, presented her green card to the official, and had a discussion with the official about her ability to vote, explaining that she was a lawful permanent resident of Florida. *Id*. The voter registration official told her that she could register and vote even though she was a lawful permanent resident. *Id.* Her husband, who was a United States citizen and passed away on March 1, 2024, also understood that she could register to vote. *Id.*

Relying upon the voter registration official's advice, Jeffries filled out her voter registration application in person. *See id.* According to Jeffries, she filled everything out on the form except for the United States citizenship question, leaving both boxes unchecked, and submitted her application to the voter registration official. *See id*. She registered to vote as a Republican and requested to receive her ballots by mail just like her husband had been receiving them. *Id.* Her application was stamped as accepted that same day. Ex. 3 at 2. Thereafter, Jeffries received her mail-in ballots and started voting in the primary and general

elections, beginning with the 2018 general election up until she cast her last ballot in the 2024 general election. Ex. 2 at Disc. 140; Ex. 4 at Disc. 188.

Behind the scenes, back in 2018, Jeffries's voter registration application was being processed at the Pasco elections office. Ex. 3. Tiffanni Alligood, the Chief Administrative Officer for the Pasco County Board of Elections, says it's unknown who the voter registration official was that ultimately accepted Jeffries's voter application—records only show who processed her application. *See id*. A close study of the database maintenance screens reveals that there aren't any fields concerning the applicant's status as a U.S. citizen or as a lawful permanent resident. *Id.* at Disc. 76–78. Records show that Stephanie Salazar (operator ssalzar) processed Jeffries's application on September 17, 2018, imputing the information into the supervisor of elections database field by field. *Id.* at 4–6. Studying these entries by the operators reveals that there aren't any fields with respect to status or citizenship. *Id.* at 4–13.

In February 2024, Jeffries applied to become a naturalized citizen by filling out a Form N-400. Ex. 5 at Disc. 438. She had an interview with USCIS personnel on December 12, 2024. *Id*. She was asked if she had ever registered to vote and had she ever voted, to which she answered each question in the affirmative. Specifically, Jeffries said as follows: ". . . When I went to the voting office, they told me there that I could vote and register even though I was a legal permanent

resident. I told them I was a legal permanent resident." *Id*. USCIS didn't have any indication prior to Jeffries's admission during her interview that she was registered to vote or that she had ever voted in a federal election. *See id.* at Disc. 462–64.

The very next day, she went to the Pasco County supervisor of elections office located in Dade City and filled out a request to be removed from the voter roll as instructed. Ex. 4 at Disc. 184. On March 12, 2025, her application for naturalization was denied. *Id.* at Disc. 170–72. Jeffries appealed her decision and requested a hearing. Ex. 5 at Disc. 437–39. Her hearing was conducted on July 28, and she received notice on September 9 from USCIS reaffirming their denial for her request for naturalization. *Id*.

## III. Law and argument.

"Entrapment by estoppel creates a narrow exception to the general rule that ignorance of the law is no defense.[1] Stated simply, entrapment by estoppel "applies when an official tells a defendant that certain conduct is legal and the defendant believes that official."[2] The defendant must've reasonably relied on

---

[1] *United States v. Alvarado*, 808 F.3d 474, 485 (11th Cir. 2015) (cleaned up).

[2] *United States v. Hedges*, 912 F.2d 1397 (11th Cir. 1990) (citing *Cox v. Louisiana*, 379 U.S. 559 (1965); *Raley v. Ohio*, 360 U.S. 423 (1959) ; *United States v. Tallmadge*, 829 F.2d 767 (9th Cir. 1987); *United States v. Clegg*, 846 F.2d 1221 (9th Cir. 1988); *United States v. Hsieh Hui Mei Chen*, 754 F.2d 817 (9th Cir.), cert. denied, 471 U.S. 1139 (1985)).

the assurances of a government official that their actions are lawful.[3] This affirmative defense is rooted in principles of equity and fairness.[4] So taking everything together, entrapment by estoppel "applies when a government official tells a defendant that certain conduct is legal and the defendant commits what would otherwise be a crime in reasonable reliance on the official's representation."[5]

In the Eleventh Circuit, the general rule is that a defendant must've reasonably relied upon a federal government official's misstatement in order to raise the defense of entrapment by estoppel in a federal prosecution.[6] Said another way, this defense doesn't apply in a federal case when a defendant reasonably relies upon a state actor's incorrect advice.[7] But this isn't a hard and fast rule. Things are different when a state actor has the actual or apparent authority to implement federal law[8] and gives mistaken advice to a defendant who reasonably relies on it to unwittingly break the law.[9] In such cases,

---

[3] *Alvarado*, 808 F.3d at 485 (citing *United States v. Baptista-Rodriguez*, 17 F.3d 1354, 1368 n. 18 (11th Cir. 1994)).
[4] *United States v. Thompson*, 25 F.3d 1558, 1564 (11th Cir. 1994) (citing *Hedges*, 912 F.3d at 1405).
[5] *United States v. Baptista-Rodriguez*, 17 F.3d 1354, 1368 (11th Cir. 1994) (citing *Hedges*, 912 F.2d at 1405).
[6] *United States v. Funches*, 135 F.3d 1405, 1407 (11th Cir. 1998).
[7] *Id.* (citing *United States v. Bruscantini*, 761 F.2d 640, 642 (11th Cir. 1985)).
[8] The Eleventh Circuit said in dicta that there's not much difference between actual or apparent authority—principles of fairness are what really matter. *Alvarado*, 808 F.3d at 485–86 (noting that courts, such as those in the Second Circuit, see no distinction between actual and apparent authority because the focus is on fairness to defendants who rely on the conduct of a government official's advice and believing their acts are authorized).
[9] *Alvarado*, 808 F.3d at 485–86.

entrapment by estoppel would be a viable defense for a defendant to raise in a criminal prosecution in federal court.[10]

In 1993, Congress enacted the National Voter Registration Act, codified in 52 U.S.C. §§ 20501–20511, the stated purpose of which was to increase the number of voters, enhance voter participation, protect election integrity, and maintain accurate voter rolls.[11] Under the NVRA, also known as the "Motor Voter" law, each state would be held to task administering voter registration[12] tasked with establishing procedures to register eligible persons to vote in federal elections (1) by applying simultaneously for their driver's license, (2) by mail, or (3) in person (A) at a designated registration site under state law where the resident lives and (B) at the appropriate federal, state, or nongovernmental office in accordance with the NVRA.[13] In 1994, the Florida Voter Registration Act was enacted into law[14] in order to implement the NVRA.[15]

---

[10] *See id.*

[11] 52 U.S.C. § 20501(b).

[12] *Id.* at § 20507.

[13] *Id.* at § 20503(a).

[14] It's important to note at the outset that federal courts are required to take judicial notice of state law. *Patel v. United States Attorney General*, 971 F.3d 1258, 1264 n. 3 (11th Cir. 2020) (citing *Lamar v. Micou*, 114 U.S. 218, 223 (1885)) ("The law of any state of the Union, whether depending upon statutes or upon judicial opinions, is a matter of which the courts of the United States are bound to take judicial notice, without plea or proof.").

[15] Florida Division of Elections, *Voter Registration Agencies*, https://dos.fl.gov/elections/for-voters/voter-registration/voter-registration-agencies-and-nvra/.

The supervisor of elections is a position of state-elected public office that serves each of their respective counties in Florida.[16] One of the many duties each supervisor of elections has is to register eligible persons to vote[17] using a statewide voter registration system created by the Secretary of State.[18] Under the FVRA, supervisors of election[19] must, among other duties, determine an applicant's eligibility to register to vote, remove persons from the voter roll, and maintain public records.[20] They must also ensure that registration forms are available in their offices, at other designated locations, and by mail upon the registering person's request.[21] These applications "must be accepted in the office of any supervisor . . . when hand delivered by the applicant or a third party during the hours that office is open or when mailed."[22] Voter registration officials[23] are responsible for accepting voter registration applications[24] and are provided secured access to the statewide voter registration system "to provide, access, and update voter registration information."[25] Applicants must be notified

---

[16] Art VIII, sec. 1(d), Fla. Const.; Fla. Stat. §§ 98.015–98.461.
[17] Fla. Stat. § 98.015; Brian E. Corley, *Supervisor of Elections, Pasco County*, https://www.pascovotes.gov/supervisor_of_elections/responsibilities.php.
[18] Fla. Stat. § 98.035.
[19] Defined as "supervisors" in Fla. Stat. § 97.021(39).
[20] Fla. Stat. § 98.045.
[21] Fla. Stat. § 97.052(1)(b)7.a.
[22] Fla. Stat. § 97.053(1).
[23] "Voter registration official" is defined as "any supervisor of elections or individual authorized by the Secretary of State to accept voter registration applications and execute updates to the statewide voter registration system." Fla. Stat. § 97.021(46).
[24] Fla. Stat. § 97.053.
[25] Fla. Stat. § 98.035(2).

by their supervisor if their voter registration application is incomplete, denied, or is a duplicate.[26]

All of this to say, the NVRA establishes the federal framework that mandates state compliance with registering would-be voters. The NVRA, in turn, authorizes states to implement these rules through local law and local election officials. Here in Florida, that local law is the FVRA. If it weren't for local and state offices, such as the Pasco County Supervisor of Elections, no one in Pasco County would be able to register to vote in federal elections. Through this federal/state statutory framework, voting registration officials speak on behalf of the federal government to register eligible persons to vote in federal elections. Such local officials have the actual or apparent authority to give binding advice to applicants—even bad or mistaken advice concerning one's eligibility to vote in federal elections. It would be patently unfair to prosecute someone who reasonably relies on a local official's advice that acts as a conduit for, or speaks on behalf of, the federal government in terms of who is and isn't eligible to register to vote and exercise that right to vote. What matters is the authority, not whether that person is in fact a federal official. That's the whole gist of entrapment by estoppel.

[26] Fla. Stat. § 97.073(1).

There isn't a pattern jury instruction for entrapment by estoppel in the Eleventh Circuit. The Seventh Circuit has a straightforward patter instruction that's been modified with Eleventh Circuit case law in mind. The elements of an entrapment by estoppel defense are as follows:

> 1) A government official with actual or apparent authority over the federal matter told the defendant that her conduct would be lawful;
>
> 2) The defendant actually relied on what this official told her in taking this action; and
>
> 3) The defendant's reliance on what the official told her was reasonable. In deciding this, you should consider all of the relevant circumstances, including the identity of the government official, what that official said to the defendant, and how closely the defendant followed any instructions the official gave.

Doc. 49 at 3–4. The facts and circumstances of Jeffries's case demonstrate that entrapment by estoppel is a viable defense.

Let's start with the first element. When Jeffries went to her local election office in Dade City on September 14, 2018, she spoke with a voter registration official, presented the official her green card, and told the official that she's a lawful permanent resident from Canada. Jefferies asked the official whether she could vote, and the official told her she could register to vote despite being a noncitizen. This bad advice led Jeffries to believe that her conduct of registering to vote as a noncitizen and voting as such would be lawful. That state official was authorized under the FVRA, which implements the NVRA, to determine

who's eligible to vote and helps them register to vote. Hence, the official that Jeffries spoke with had the actual or apparent authority over the federal matter of registering people to vote in federal elections.

Let's move to the second element. Jefferies didn't rely on the advice of her peers or the advice of her husband. She went to the Dade City elections office, asked whether she could vote as a noncitizen, and actually relied on the erroneous advice that the voter registration official gave her. Despite any claims to the contrary, Jefferies never held herself out as being a U.S. citizen and didn't check off the box that she was a citizen when she completed her application. There won't be any direct evidence at trial that Jeffries checked the box off herself. It's her contention that she left those checkboxes blank and gave the voter registration official her completed application.

Finally, as it relates to the third element, it was reasonable for Jefferies to rely upon the official's mistaken advice that she could vote as a noncitizen and register to vote because the official was an employee at the Pasco County supervisor of elections office. The official was authorized as a voter registration official to register people to vote. Jefferies presented the official her green card, asked the official if she could vote as a noncitizen, and the official told her that she could. Jefferies relied on this erroneous advice to her detriment; she

registered to vote and later voted in the election. But for the voter registration official's bad advice, Jeffries wouldn't have registered to vote.

There's more to consider under the totality of the circumstances. The Pasco County supervisor of elections records support Jeffries's version of events. Her application was received on September 14 and began being processed 3 days later by Salazar. Salazar went field by field imputing the information on Jeffries's voter application into the database. It bears repeating that the database doesn't have any field to check off whether someone is or isn't a U.S. citizen or a lawful permanent resident. Once Jefferies's application was processed and approved, she received her voter registration card in the mail and began voting in elections.

Jefferies's own conduct when she was interviewed to become a naturalized citizen should also be considered. When she was asked whether she voted in a federal election, Jeffries was earnest and told the truth that she had voted in federal elections, believing that she lawfully could do so. She did her best to remember how many elections she had cast a mail-in ballot and answered their questions truthfully to the best of her ability. In all the time that Jeffries has been in the United States, she's always held herself out as being a lawful permanent resident from Canada—not a U.S. citizen. If it wasn't for Jeffries, USCIS wouldn't have learned that she had voted in any federal election.

Jeffries's case is factually identical to *Keathley v. Holder* out of the Seventh Circuit. Elizabeth Keathley was a citizen of the Philippines and married to a U.S. citizen. 696 F.3d 644, 645 (2012). She was present in the United States on a nonimmigrant visa while she was waiting for her green card. *Id.* Keathley arrived in the U.S. and was living in Illinois when she applied for her driver's license. *Id.* The official attending to Keathley asked her if she wanted to vote, and Keathley said she did. *Id.* Keathley filled out her voter application and turned it in. *Id.*

The box asserting that she was a U.S. citizen was checked off on her voter application; however, Keathley didn't remember who had checked off the box—whether it was her or the state employee who was tending to her. *Id.* When Keathley applied for her driver's license, she held herself out as being from the Philippines and presented her passport and her visa. *Id.* The state official knew that Keathley was alien before signing her up to vote. *Id.* at 646.

In addition to receiving her driver's license, Keathley received a voter registration card and voted in the November 2006 election. *Id.* at 645. Receiving the voter registration card led Keathley to believe that she could lawfully vote and didn't know that it was against federal law to vote in a federal election as a noncitizen. *Id.* at 646. Immigration officials were working on her green card application and discovered she had voted. *Id.* at 645. There was an administrative finding that Keathley violated 18 U.S.C. § 611 by voting as a noncitizen in a

federal election. *Id.* She was ordered removed by an immigration judge and the Board of Immigration appeals affirmed the decision. *Id.*

Keathley raised an entrapment by estoppel defense since the motor-voter law authorizes employees from a state department of motor vehicles to register applicants to vote in federal elections under the motor-voter law, speaking on behalf of the federal government on this subject. *Id.* at 646–47. The Seventh Circuit reversed and remanded the case for further proceedings, reasoning that there should Keathley's entrapment by estoppel defense should be considered since it wasn't explored below. *Id.* at 647. The court noted in dicta that someone "who behaves with scrupulous honesty only to be misled by a state official should be . . . welcome in this country." *Id.*

**IV. Conclusion.**

Just like Keathley, Jeffries acted scrupulously. She reasonably relied upon a voter registration official's mistaken advice that she could register and vote in federal elections as a noncitizen to her detriment. That official in the Pasco County Supervisor of Elections had the ability to speak on behalf of the federal government, acting as a conduit of sorts, by giving Jeffries that bad advice and signing her up to vote even though she legally couldn't do so as a noncitizen.

Truth be told there's a question of fact as to how the citizenship box was checked off. Jeffries says that she turned in her voter application and never

claimed she was a U.S. citizen on her voter application. But this is an issue of fact for the Court to determine given the facts and evidence that will be presented at trial. She should still be able to present the defense of entrapment by estoppel for the Court's consideration.

Accordingly, in answering the question presented, a defense instruction for entrapment by estoppel is merited in this case.

Respectfully submitted,

Charles L. Pritchard, Jr.
Federal Public Defender

*/s/ Stephen Consuegra*
Assistant Federal Public Defender
Florida Bar No. 105816
400 N Tampa St, Suite 2700
Tampa, FL 33602
Phone: (813) 228-2715
Fax: (813) 228-2562
E-mail: stephen_consuegra@fd.org

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on August 24, 2026, a true and correct copy of the foregoing was furnished using the CM/ECF system with the Clerk of the Court, which will send notice of the electronic filing to the following: AUSA Ilyssa Spergel.

*/s/ Stephen Consuegra*
Assistant Federal Public Defender